1
2
3
4
5
6
7
8                              IN THE UNITED STATES DISTRICT COURT

9                            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   DANIEL PIZZA,                              No. C-13-0688 MMC

12              Plaintiff,                      **ORDER GRANTING DEFENDANT'S
                                                MOTION TO DISMISS; AFFORDING**
        v.                                      **PLAINTIFF LEAVE TO FILE AMENDED**
13                                              **COMPLAINT; CONTINUING CASE**
     FINANCIAL INDUSTRY REGULATORY              **MANAGEMENT CONFERENCE;**
14   AUTHORITY, INC.,                           **VACATING HEARING**

15              Defendant.
     _____/

16

17        Before the Court is defendant Financial Industry Regulatory Authority, Inc.'s

18   ("FINRA") motion to dismiss, filed March 28, 2013.  Plaintiff Daniel Pizza ("Pizza") has filed

19   opposition, to which FINRA has replied.  Having read and considered the papers filed in

20   support of and in opposition to the motion, the Court deems the matter suitable for decision

21   on the parties' respective written submissions, VACATES the hearing scheduled for May

22   10, 2013, and rules as follows.

23                                        **BACKGROUND**

24        The following factual allegations are taken from the complaint and are assumed true

25   for purposes of the instant motion.

26        On December 23, 2005, FINRA offered Pizza employment and, before Pizza

27   accepted the offer, advised Pizza "he would be eligible for full retirement benefits under

28   FINRA's pension plan at age 62."  (See Compl. ¶ 6.)  Pizza accepted FINRA's offer on

United States District Court
For the Northern District of California

1   December 26, 2005 (<u>see</u> <u>id.</u>); at that time, he was 49 years old (<u>see</u> Compl. ¶ 5).  When

2   Pizza was hired in December 2005, "Debra Pohlson of FINRA asked if he would like to start

3   immediately or wait until the holidays were over." (<u>See</u> Compl. ¶ 7.)  Pizza was not

4   informed that his start date would have an effect on his eligibility for retirement benefits at

5   age 62.  (<u>See</u> <u>id.</u>)  "Based on the information FINRA provided to Pizza, he agreed to report

6   to FINRA after the holidays," and "formally report[ed] to work at FINRA on January 3,

7   2006." (<u>See</u> Compl. ¶¶ 7, 9.)

8        In July 2011, Pizza was "informed" that he was "not eligible for full benefits under the

9   pension plan until age 65"; specifically, Pizza "learned" that employees hired before

10   January 1, 2006 "received full employment benefits at age 62," whereas "those hired after

11   January 1, 2006, would not receive full benefits until age 65." (<u>See</u> Compl. ¶ 12.)  Pizza

12   further "learned" that "FINRA did not regard Pizza as having been hired until January 2006,

13   because he did not physically report to work until that time." (<u>See</u> <u>id.</u>)

14        Pizza thereafter "expressed his belief," to "various Human Resources and

15   supervisory personnel in FINRA's San Francisco, Los Angeles and Washington, D.C.

16   offices," that "he was entitled to full retirement benefits at 62 because of his 2005 hire date

17   and the representations that had been made to him at the time he accepted employment

18   with FINRA." (<u>See</u> Compl. ¶ 13.)  Pizza also advised FINRA that he had "consulted" with a

19   "third party pension plan specialist," which specialist "supported [Pizza's] position regarding

20   pension benefits." (<u>See</u> <u>id.</u>)

21        "Almost immediately after Pizza disclosed the fact that he had been working with a

22   benefits specialist," FINRA "began conducting investigations into Pizza's personal

23   investments in a pre-textual [sic] attempt to find technical violations of regulations

24   prohibiting FINRA employees from investing in companies that derive a minimum

25   percentage of revenues from brokerage operations." (<u>See</u> Compl. ¶ 14.)  "Prior to this

26   time, FINRA routinely was informed of Pizza's investments and had not raised any

27   objections." (<u>Id.</u>)  As a result of its investigation, FINRA "challenged" some of Pizza's

28   trades and ordered that he disgorge $905.30 in connection with the challenged trades;

1   FINRA had received "information concerning Pizza's trading activities as they occurred,"

2   but did not challenge the trades until "close to eight (8) months after they were made, and

3   only after Pizza raised questions about FINRA's pension plans."  (See Compl. ¶ 15.)

4   FINRA also "complained of small positions" Pizza had been holding "for years" in a "family

5   trust" he managed.  (See Compl. ¶ 16.)

6       On October 13, 2011, Pizza met with two of his supervisors and "expressed his

7   belief that FINRA was conducting harassing investigations into his personal investments in

8   retaliation for inquiries regarding FINRA's pension plans."  (See Compl. ¶ 18.)  Later that

9   same date, Pizza received a voicemail from a supervisor in FINRA's human resources

10  department "expressing regret that Pizza had decided to resign and informing Pizza that his

11  termination package was in the mail."  (See id.)  Although Pizza responded by email that he

12  had not resigned, "FINRA never offered to reinstate Pizza's employment."  (See id.)

13  Thereafter, the California Employment Development Department, after interviewing both

14  Pizza and FINRA, found Pizza had been "constructively terminated."  (See Compl. ¶ 19.)

15      At the time of his termination, Pizza was "seven (7) years from the retirement age of

16  62 that was represented to him at the beginning of his employment."  (See Compl. ¶ 20.)

17  "Given his age and the state of the economy, Pizza has not been able to secure

18  subsequent employment."  (See Compl. ¶ 21.)

19      Based on the above allegations, Pizza asserts six claims for relief, titled,

20  respectively, "Wrongful Termination in Violation of Public Policy," "Breach of Contract,"

21  "Breach of Implied Covenant of Good Faith and Fair Dealing," "Promissory Estoppel,"

22  "Fraud - Nondisclosure," and "Fraud - Negligent Misrepresentation."

23                                    **LEGAL STANDARD**

24      Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

25  on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

26  cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

27  1990).  In analyzing a motion to dismiss, a district court must accept as true all material

28  allegations in the complaint, and construe them in the light most favorable to the

nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

"To survive a motion to dismiss, a complaint must contain sufficient factual material,

accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (internal quotation and citation omitted).

**DISCUSSION**

In its motion to dismiss, FINRA argues that each of Pizza's claims for relief is

preempted by the Employee Retirement Income Security Act ("ERISA").

In enacting ERISA, Congress included a "broadly worded" preemption provision that

it intended be "expansively applied," see Ingersoll-Rand Co. v. McClendon, 498 U.S. 133,

138 (1990), specifically, that "the provisions of [ERISA] shall supersede any and all State

laws insofar as they may now or hereafter relate to any employee benefit plan," see 29

U.S.C. § 1144(a).  "The preemption extends to state common-law causes of action as well

as regulatory laws."  Scott v. Gulf Oil Corp., 754 F.2d 1499, 1502, 1506 (9th Cir. 1985)

(holding common-law fraud claim preempted, where plaintiffs alleged defendant "misled

[plaintiffs] by representing to them that they were not entitled to severance pay" they had

"allegedly accumulated during the course of plaintiffs' employment with [defendant]").

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it

has a connection with or reference to such a plan."  Shaw v. Delta Air Lines, Inc., 463 U.S.

85, 96-97 (1983) (quoting § 1144(a)).  As discussed below, the Court finds each of Pizza's

six claims for relief "relates to" FINRA's employee benefit plan.

The First Claim for Relief, as noted above, is a claim for wrongful termination in

violation of public policy.  Under California law, such a claim "must be predicated on a

fundamental, well-established, substantial policy that concerns society at large rather than

the individual interests of the employer or employee . . . and that is delineated in some

constitutional or statutory provision."  See Hunter v. Up-Right, Inc., 6 Cal. 4th 1174, 1180

(1994).  Pizza bases his wrongful termination claim on policies he asserts are delineated in

ERISA; specifically, Pizza alleges that "[ERISA] embodies fundamental, substantial, and

well-established public policies" and that "[i[n terminating Pizza's employment following his

4

1    questioning of its treatment of his retirement rights and benefits, FINRA violated these

2    public policies."  (See Compl. ¶ 24.)  In other words, the requisite, and sole, "constitutional

3    or statutory provision" on which Pizza bases the First Claim for Relief is ERISA.  Under

4    such circumstances, the First Claim for Relief is preempted.  See Nishimoto v. Federman-

5    Bachrach & Associates, 903 F.2d 709, 713 (9th Cir. 1990) (holding wrongful termination

6    claim preempted by ERISA where plaintiff alleged she was terminated in "attempt to

7    prevent" plaintiff from obtaining pension benefits in future to which she assertedly was

8    entitled).[1]

9          The Second Claim for Relief, alleging breach of contract, is based on the allegation

10   that FINRA promised to provide Pizza "full retirement benefits at age 62" and that FINRA

11   later "breached" said promise when it "informed Pizza that he would not in fact be eligible

12   for the retirement benefits it had represented earlier."  (See Compl. ¶¶ 29, 30.)  The Third

13   Claim for Relief, alleging breach of the implied covenant of good faith and fair dealing, is

14   based on the allegation that FINRA, by not advising Pizza at the time he was hired that his

15   right to full retirement benefits at age 62 was dependent on "formally report[ing] to work

16   before year-end 2005" (see Compl. ¶ 35) and by later "denying Pizza his full retirement

17   benefits" (see Compl. ¶ 37), "unfairly interfered with his right to receive the full benefits of

18   his contract" (see id.).  The Fourth Claim for Relief, alleging promissory estoppel, is based

19   on FINRA's alleged promise that Pizza, at age 62, would be entitled to "full retirement

20   benefits under FINRA's pension plan."  (See Compl. ¶¶ 42, 44.)  The Second, Third, and

21   Fourth Claims for Relief, on their face, relate to FINRA's ERISA plan, given each of those

22   claims is based on the allegation that FINRA is required to comply with its promise that

23

24          [1]In his opposition, Pizza notes correctly that a wrongful termination claim is not
     preempted where a loss of benefits is a collateral consequence of an otherwise wrongful
25   termination, for example, where an employee is terminated for engaging in whistleblowing.
     See, e.g., Campbell v. Aerospace Corp., 123 F.3d 1308, 1310, 1313 (9th Cir. 1997)
26   (holding wrongful termination claim not preempted where claim based on allegation plaintiff
     was terminated for "blowing the whistle" on defendant's "illegally billing the U.S. Air Force,"
27   even though plaintiff's damages included loss of retirement benefits), cert. denied, 523 U.S.
     1117 (1998).  Pizza's wrongful termination claim, however, is based solely on the theory
28   that the termination violated policies embodied in "ERISA."  (See Compl. ¶ 24.)

1  Pizza would be entitled to full retirement benefits at age 62.  See Scott, 754 F.2d at 1501,

2  1505-06, 1506 (holding claims for "breach of employment contract" and for "breach of the

3  duty to act fairly and in good faith" preempted by ERISA, where claims were based on

4  allegation defendant failed to comply with promise to provide plaintiffs with severance

5  benefits upon termination of employment); DeVoll v. Burdick Painting, Inc., 35 F.3d 408,

6  411-12 (9th Cir. 19945) (holding promissory estoppel claim preempted by ERISA, where

7  claim based on theory defendant breached promise to provide plaintiff with specified

8  amount of benefits), cert. denied, 514 U.S. 1027 (1995).

9       The Fifth and Sixth Claims for Relief are both based on the allegation that FINRA

10  committed fraud by not advising Pizza that the terms of FINRA's pension plan required that

11  he begin working in 2005 to be eligible for full retirement benefits at age 62, and that Pizza,

12  acting in reliance on what he was told, delayed his start date to 2006.  As with Pizza's other

13  claims for relief, his fraud claims "relate to" an ERISA plan, as the alleged

14  misrepresentation pertains solely to plan benefits and Pizza assertedly lost those benefits

15  acting in reliance thereon.  See Olson v. General Dynamics Corp., 960 F.2d 1418, 1419,

16  1423 (9th Cir. 1991) (holding fraud claim preempted by ERISA, where plaintiff alleged

17  defendant, during employment negotiations, promised his benefits would be equal to or

18  better than those provided by prior employer, but when plaintiff later retired, defendant

19  provided plaintiff with lesser benefits than those he would have received from prior

20  employer), cert. denied, 504 U.S. 986 (1992); see also Farr v. U.S. West Communications,

21  Inc., 151 F.3d 908, 912-13 (9th Cir. 1998) (holding fraud claim preempted by ERISA where

22  plaintiffs alleged defendant provided "incomplete, false, and misleading information

23  regarding the tax consequences of [ ] distributions" under pension plan; finding "tax

24  consequences of the [ ] plan clearly 'relate to' plan administration because they are part of

25  the overall mix of information relied upon by [p]laintiffs in making their decisions to

26  //

27  //

28  //

6

1    participate in the plan").[2]

2              Accordingly, FINRA's motion to dismiss will be granted.

3              In his opposition, Pizza requests leave to amend to allege ERISA claims in the event

4    the Court finds his state law claims are preempted.  FINRA argues the claims should be

5    dismissed with prejudice.  A finding that a state law claim is preempted by ERISA does not

6    necessarily mean that a claim under ERISA exists.  See Olson, 960 F.2d at 1422-23

7    (holding, in determining whether state law claim is preempted by ERISA, availability of

8    equivalent claim under ERISA is not relevant; stating, "any [ ] gap [in ERISA] is the concern

9    of Congress"); see also id. at 1424 (concurring opinion) (observing numerous federal courts

10   have found state law claims preempted "even when ERISA provides no substitute for the

11   state cause of action"; collecting cases).  Nevertheless, at this stage of the proceedings, it

12   is not clear that an amendment to allege ERISA claims necessarily would be futile, see,

13   e.g., 29 U.S.C. § 1140 (providing it is unlawful to discharge plan participant "for exercising

14   any right to which he is entitled under [a plan or ERISA]" or "for the purpose of interfering

15   with the attainment of any right to which such participant may become entitled under the

16   plan"), and, consequently, Pizza will be afforded leave to amend.

17                                         **CONCLUSION**

18             For the reasons stated, FINRA's motion to dismiss is hereby GRANTED, and the

19   complaint is hereby DISMISSED, with leave to amend.  Pizza's amended complaint, if any,

20   shall be filed no later than May 27, 2013.

21             In light of the above, the Case Management Conference is hereby CONTINUED

22   from May 24, 2013 to July 12, 2013.  A Joint Case Management Statement shall be filed

23   //

24

_____

25             [2]In his opposition, Pizza relies on authority holding that where an employer, during
26   job negotiations, makes a false statement concerning plan benefits, a state law claim is not
     preempted to the extent the plaintiff seeks "reliance" damages not based on a loss of plan
27   benefits, such as "moving expenses" caused by relocation.  See, e.g., Thurman v. Pfizer,
     Inc., 484 F.3d 855, 862 (6th Cir. 2007).  Pizza's citation to such authority is unavailing, as
28   the only damage Pizza alleges resulted from his delayed starting date is the loss of plan
     benefits.

1   no later than July 5, 2013.

2        **IT IS SO ORDERED.**

3

4   Dated:  May 6, 2013

5                                                   MAXINE M. CHESNEY
                                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28